1

2

3

4

5

6

7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

8

EZRA J. SCOTT,                                          NO.  C14-822-MJP-JPD

9
                                        Plaintiff,

10            v.                                         REPORT AND
                                                        RECOMMENDATION
11   CAROLYN W. COLVIN, Acting
     Commissioner of Social Security,

12
                                        Defendant.

13

14            Plaintiff Ezra J. Scott appeals the final decision of the Commissioner of the Social

15   Security Administration ("Commissioner") which denied his application for Disability

16   Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-33,

17   after a hearing before an administrative law judge ("ALJ").  For the reasons set forth below,

18   the Court recommends that the Commissioner's decision be reversed and remanded for further

19   administrative proceedings.

20                          I.        FACTS AND PROCEDURAL HISTORY

21            At the time of his date last insured, plaintiff was a 33 year old man with a high school

22   education and some college.  Administrative Record ("AR") at 35, 127, 131.  His past work

23   experience includes employment as a job analyst.  AR at 35.  Plaintiff was last gainfully

24   employed in 2006.  AR at 130-38.

REPORT AND RECOMMENDATION - 1

On July 29, 2011, plaintiff filed an application for DIB, alleging an onset date of June 1, 2006.  AR at 127-29.  Plaintiff later requested to amend his alleged disability onset date to January 1, 2008.  AR at 32, 239.  Plaintiff asserts that he is disabled due to fibromyalgia, irritable bowel syndrome, migraine headaches, and cognitive difficulties.  AR at 142.

The Commissioner denied plaintiff's claim initially and on reconsideration.  AR at 74-76, 78-79.  Plaintiff requested a hearing which took place on December 13, 2012.  AR at 26-60.  On January 9, 2013, the ALJ issued a decision finding plaintiff not disabled and denied benefits based on a finding that plaintiff did not have a severe physical or mental impairment.  AR at 7-25.  Plaintiff's administrative appeal of the ALJ's decision was denied by the Appeals Council, AR at 1-5, making the ALJ's ruling the "final decision" of the Commissioner as that term is defined by 42 U.S.C. § 405(g).  On June 5, 2014, plaintiff timely filed the present action challenging the Commissioner's decision.  Dkt. 1.

## II.      JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. § 405(g).

## III.      STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005).  "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).  The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist.  *Andrews v. Shalala*,

53 F.3d 1035, 1039 (9th Cir. 1995).  While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner.  *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).  When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld.  *Id.*

The Court may direct an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose."  *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)).  The Court may find that this occurs when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

*Id*. at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that erroneously rejected evidence may be credited when all three elements are met).

## IV.   EVALUATING DISABILITY

As the claimant, Mr. Scott bears the burden of proving that he is disabled within the meaning of the Social Security Act (the "Act").  *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (internal citations omitted).  The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months.  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A claimant is disabled under the Act only if his impairments are of such severity that he is unable to do his previous work, and cannot, considering his age, education, and work experience, engage in any other substantial gainful activity existing in the

national economy.  42 U.S.C. § 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act.  *See* 20 C.F.R. § 404.1520.  The claimant bears the burden of proof during steps one through four.  At step five, the burden shifts to the Commissioner.  *Id.*  If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps.

Step one asks whether the claimant is presently engaged in "substantial gainful activity."  20 C.F.R. § 404.1520(b).[1]  If he is, disability benefits are denied.  If he is not, the Commissioner proceeds to step two.  At step two, the claimant must establish that he has one or more medically severe impairments, or combination of impairments, that limit his physical or mental ability to do basic work activities.  If the claimant does not have such impairments, he is not disabled.  20 C.F.R. § 404.1520(c).  If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations.  20 C.F.R. § 404.1520(d).  A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled.  *Id.*

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC").  20 C.F.R. § 404.1520(e).  Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work to determine

---

[1] Substantial gainful activity is work activity that is both substantial, i.e., involves significant physical and/or mental activities, and gainful, i.e., performed for profit.  20 C.F.R. § 404.1572.

whether he can still perform that work.  20 C.F.R. § 404.1520(f).  If the claimant is able to

perform his past relevant work, he is not disabled; if the opposite is true, then the burden shifts

to the Commissioner at step five to show that the claimant can perform other work that exists

in significant numbers in the national economy, taking into consideration the claimant's RFC,

age, education, and work experience.  20 C.F.R. § 404.1520(g); *Tackett*, 180 F.3d at 1099,

1100.  If the Commissioner finds the claimant is unable to perform other work, then the

claimant is found disabled and benefits may be awarded.

## V.      DECISION BELOW

On January 9, 2013, the ALJ issued a decision finding the following:

1.   The claimant last met the insured status requirements of the Social
Security Act on December 31, 2010.

2.   The claimant did not engaged in substantial gainful activity during the
period from his alleged onset date of June 1, 2006 through the date last
insured of December 31, 2010.

3.   Through the date last insured, the claimant had the following
medically determinable impairment: fibromyalgia.

4.   Through the date last insured, the claimant did not have an impairment
or combination of impairments that significantly limited the ability to
perform basic work-related activities for 12 consecutive months;
therefore, the claimant did not have a severe impairment or
combination of impairments.

5    The claimant was not under a disability, as defined in the Social
Security Act, at any time from June 1, 2006, the alleged onset date,
through December 31, 2010, the date last insured.

AR at 12-30.

## VI.      ISSUES ON APPEAL

As identified in plaintiff's Opening Brief, the principal issues on appeal are:

1.   Whether the ALJ properly evaluated the Mr. Scott's credibility;

2.   Whether the ALJ properly evaluated the opinions of treating physician Erik
Suh, M.D.;

REPORT AND RECOMMENDATION - 5

3.      Whether the ALJ properly evaluated the opinions of treating rheumatologist John Baldwin, M.D.; and

4.      Whether the ALJ properly evaluated the lay witness evidence.

Dkt. No. 11 at 1.

### VII.    DISCUSSION

The ALJ found at step two of the sequential disability evaluation process that plaintiff's fibromyalgia is a medically determinable impairment. AR at 12-14. Following a review of the evidence, the ALJ further concluded that plaintiff's fibromyalgia does not significantly limit plaintiff's ability to perform basic work activities and, therefore, is not a severe impairment. AR at 14-20. Because plaintiff does not have a severe impairment, the ALJ concluded that plaintiff is not disabled under the Act. AR at 20.

This Court agrees that plaintiff's fibromyalgia is a medically determinable impairment and affirms this finding. However, for the reasons discussed in the subsequent sections, the Court finds that the remainder of the ALJ's decision in this claim is based on legal error and not supported by substantial evidence in the record and should be reversed.

### A.      The ALJ's Assessment of Plaintiff's Credibility

Plaintiff argues that the ALJ erred in evaluating his credibility. Dkt. 11 at 1-9. Here, the ALJ rejected plaintiff's testimony because plaintiff's alleged symptoms and limitations are not consistent with the overall record. AR at 17. In conjunction with this finding, the ALJ identified a number of apparent inconsistencies, including a lack of objective medical evidence support for plaintiff's symptom complaints. AR at 17-18.

Defendant argues that the ALJ "reasonably evaluated all of the evidence in the record and found that there was no credible or persuasive evidence of any significant work-related limitations during the relevant period." Dkt. 12 at 2-10. The Commissioner does not,

REPORT AND RECOMMENDATION - 6

1  however, defend all of the reasons offered by the ALJ to discredit plaintiff's testimony.  Dkt.

2  12 at 2-10.  In so doing, defendant effectively concedes that some of the reasons offered by the

3  ALJ are legal error and not supported by substantial evidence.  For this reason, the Court

4  specifically addresses only those reasons defended by the Commissioner in her brief.  The

5  Court finds, however, that all of the reasons offered by the ALJ are legally insufficient to

6  properly reject plaintiff's testimony and should be reversed.

7        As noted above, credibility determinations are within the province of the ALJ's

8  responsibilities, and will not be disturbed, unless they are not supported by substantial

9  evidence.  A determination of whether to accept a claimant's subjective symptom testimony

10  requires a two-step analysis.  20 C.F.R. § 404.1529; *Smolen*, 80 F.3d at 1281; SSR 96-7p.

11  First, the ALJ must determine whether there is a medically determinable impairment that

12  reasonably could be expected to cause the claimant's symptoms.  20 C.F.R. § 404.1529(b);

13  *Smolen*, 80 F.3d at 1281-82; SSR 96-7p.  Once a claimant produces medical evidence of an

14  underlying impairment, the ALJ may not discredit the claimant's testimony as to the severity

15  of symptoms solely because they are unsupported by objective medical evidence.  *Bunnell v.*

16  *Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991) (en banc); *Reddick v. Chater*, 157 F.3d 715, 722

17  (9th Cir. 1988).  Absent affirmative evidence showing that the claimant is malingering, the

18  ALJ must provide "clear and convincing" reasons for rejecting the claimant's testimony.

19  *Smolen*, 80 F.3d at 1284; *Reddick*, 157 F.3d at 722.

20        When evaluating a claimant's credibility, the ALJ must specifically identify what

21  testimony is not credible and what evidence undermines the claimant's complaints; general

22  findings are insufficient.  *Smolen*, 80 F.3d at 1284; *Reddick*, 157 F.3d at 722.  The ALJ may

23  consider "ordinary techniques of credibility evaluation" including a reputation for truthfulness,

24  inconsistencies in testimony or between testimony and conduct, daily activities, work record,

REPORT AND RECOMMENDATION - 7

1   and testimony from physicians and third parties concerning the nature, severity, and effect of

2   the symptoms of which he complains. *Smolen*, 80 F.3d at 1284; *see also Light v. Social Sec.*

3   *Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

4        As a threshold matter, to the extent the Commissioner contends that the applicable

5   standard of review does not require the ALJ to provide "clear and convincing" reasons for

6   rejecting a claimant's testimony, this argument is foreclosed. Dkt. 12 at 6. As discussed

7   above, the Ninth Circuit requires this Court in reviewing an ALJ's treatment of a claimant's

8   testimony to apply the following standard: "If there is no evidence of malingering, the ALJ

9   may reject the claimant's testimony about the severity of the symptoms only by making

10  specific findings stating clear and convincing reasons for doing so." *Smolen*, 80 F.3d at 1283–

11  84; *see also Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989); *Dodrill v. Shalala*, 12

12  F.3d 915, 918 (9th Cir. 1993).

13       Moreover, the Ninth Circuit recently denied the Commissioner's attempts to undermine

14  the clear and convincing standard, stating the suggestion "lacks any support in precedent and

15  must be rejected." *See Garrison v. Colvin*, 759 F.3d 995, 1015 n. 18 (9th Cir. 2014) (rejecting

16  the Commissioner's argument that the Court should apply a standard lower than clear and

17  convincing in reviewing ALJ's evaluation of claimant's testimony where there was no

18  evidence of malingering). This Court is bound by the law of the Ninth Circuit. Accordingly,

19  because the ALJ did not find malingering, the Court finds that, in discounting plaintiff's

20  testimony, the ALJ was required to provide clear and convincing reasons that are supported by

21  substantial evidence.

22       Turning now to the substance of the ALJ decision, in assessing the severity of

23  plaintiff's fibromyalgia, the ALJ notes that despite plaintiff's allegations of debilitating

24  symptoms, all objective testing is normal. AR at 14. The ALJ then rejects plaintiff's symptom

1    testimony because it is not consistent with the overall record, which indicates that plaintiff's

2    doctors recommended that plaintiff engage in regular modest exercise and that no independent

3    gastrointestinal impairment is established by the medical record.  AR at 17-18.  The ALJ

4    further reasons that plaintiff has destructive sleep patterns and that plaintiff's mental

5    difficulties may be explained by "over medicating".  AR at 18.

6         As noted above, the Commissioner does not specifically defend all of these reasons.

7    Instead, defendant argues generally that the ALJ provided sufficient reasons supported by

8    substantial evidence in the record to find plaintiff's complaints not credible, "[m]ost

9    importantly, no medical source opinion identified any specific functional limitation" during the

10   period of time in which plaintiff was insured for purposes of DIB benefits.  Dkt. 12 at 4.  The

11   Court notes, however, that the ALJ offered this reason to reject the opinion of plaintiff's

12   treating rheumatologist John Baldwin, M.D., and not plaintiff's own testimony.  *See* AR at 16-

13   18.  According to the Ninth Circuit, "[l]ong-standing principles of administrative law require

14   us to review the ALJ's decision based on the reasoning and actual findings offered by the

15   ALJ—not post hoc rationalizations that attempt to intuit what the adjudicator may have been

16   thinking." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225-26 (9th Cir. 2009) (citing

17   *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947) (other citation omitted)); *see also Molina v.*

18   *Astrue*, 674 F.3d 1104, 1121 (9th Cir. 2012) ("we may not uphold an agency's decision on a

19   ground not actually relied on by the agency") (citing *Chenery Corp.*, 332 U.S. at 196).  As

20   such, the Court does not find defendant's first argument persuasive.

21        Defendant further argues that the ALJ gave several other reasons supported by

22   substantial evidence to find plaintiff's testimony not credible, including that:  (1) despite

23   plaintiff's allegations of debilitating symptoms, the results of all objective testing are normal;

24   (2) plaintiff failed to undergo a sleep center evaluation for his alleged insomnia, as

REPORT AND RECOMMENDATION - 9

1   recommended by Dr. Baldwin, plaintiff's rheumatologist; (3) plaintiff's testimony is

2   inconsistent with plaintiff's doctors' recommendations that he engage in regular exercise; and

3   (4) that the treatment record reflects that plaintiff received almost no mental health treatment.

4   Dkt. 12 at 6-8.  The Court is not persuaded by defendant's additional arguments.

5           In discussing plaintiff's testimony, the ALJ repeatedly points to the lack of objective

6   testing to support the severity of plaintiff's symptom complaints.  *See* AR at 14 (noting that

7   "[d]espite [plaintiff's] allegations of debilitating symptoms, all objective testing was normal"

8   and citing normal findings on electromyography (EMG) testing, nerve conduction (NVC)

9   testing, electroencephalogram (EEG) testing, computed tomography (CT) scanning, and blood

10  tests for autoimmune reactions), 15 (citing an unremarkable neurological examination and

11  normal EMG and NVC studies), 15 (noting lack of abnormal findings documented by

12  plaintiff's treating physician Erik Suh, M.D.), 16 (noting lack of documentation of objective

13  examination or clinical findings by plaintiff's treating physician Scott Tyler, M.D.), 16 (noting

14  lack of objective findings documented by plaintiff's rheumatologist John Baldwin, M.D.), 17

15  (noting unremarkable endoscopy and colonoscopy findings).

16          This rationale fails in the context of the ALJ's finding that plaintiff's fibromyalgia is a

17  medically determinable impairment.  Here, the ALJ based this finding on the American

18  College of Rheumatology Preliminary Diagnostic Criteria, which requires the exclusion of

19  other co-occurring conditions that could also be the cause of an individual's symptoms before a

20  diagnosis can be made.  *See* AR at 12-13 (finding fibromyalgia to be a medically determinable

21  impairment based on plaintiff's (1) a history of widespread pain, (2) repeated manifestations of

22  six or more symptoms, signs, or co-occurring conditions, and (3) evidence that other disorders

23  that could cause these repeat manifestations of symptoms, signs, or co-occurring conditions

24  were excluded); *see also* SSR 12-2p.  In making the finding that plaintiff's fibromyalgia is a

REPORT AND RECOMMENDATION - 10

1   medically determinable impairment, the ALJ noted that the normal neurological findings

2   documented by Dr. Baldwin excluded such co-occurring conditions.  AR at 12-13.   The

3   ALJ's use of the clinical findings necessary to exclude other diagnoses and support a diagnosis

4   of fibromyalgia to discredit a claimant's testimony regarding the limitations caused by

5   fibromyalgia defies logic.

6          Fibromyalgia is a disease that is notable for its lack of objective diagnostic techniques.

7   *See Sarchet v. Chater*, 78 F.3d 305, 306 (7th Cir.1996).  Specifically, the Ninth Circuit has

8   recognized that "'[fibromyalgia]'s cause or causes are unknown, there is no cure, and, of

9   greatest importance to disability law, its symptoms are entirely subjective.  There are no

10  laboratory tests for the presence or severity of fibromyalgia."  *Rollins v. Massanari*, 261 F.3d

11  853, 855 (9th Cir.2001) (quoting *Sarchet*, 78 F.3d at 306).  Put differently, "the absence of

12  swelling joints or other orthopedic and neurologic deficits 'is no more indicative that the

13  patient's fibromyalgia is not disabling than the absence of a headache is an indication that a

14  patient's prostate cancer is not advanced."  *Green–Younger v. Barnhart*, 335 F.3d 99, 109 (2d

15  Cir.2003) (quoting *Sarchet*, 78 F.3d at 307).  Indeed, such negative findings are necessary to

16  make a diagnosis of fibromyalgia in some cases.  *See* SSR 12-2p.  For these reasons, the ALJ's

17  rejection of plaintiff's testimony due to a lack of objective findings is not a clear and

18  convincing reason supported by substantial evidence in the record.  *Smolen*, 80 F.3d at 1284;

19  *Reddick*, 157 F.3d at 722; *see also Bunnell*, 947 F.2d 3at 343 (once a claimant produces

20  medical evidence of an underlying impairment, the ALJ may not discredit the claimant's

21  testimony as to the severity of symptoms solely because they are unsupported by objective

22  medical evidence).

23          Defendant next argues that plaintiff's failure to undergo a sleep center evaluation for

24  his alleged insomnia is a legally sufficient reason to reject plaintiff's testimony because

unexplained or inadequately explained failure to seek treatment or follow a prescribed course of treatment is a clear and convincing reason to question a claimant's credibility.  Dkt. 12 at 7 (citing *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989); Social Security Ruling ("SSR") 96-7p).  Although this rationale is recognized by the 9th Circuit, the Court notes that the ALJ does not identify this as a reason to reject plaintiff's testimony.  *See Bray*, 554 F.3d at 1225-26 (regarding post hoc rationalization).  Rather, the ALJ merely references the lack of a sleep center evaluation when discussing Dr. Baldwin's treatment notes.  AR at 16.  Furthermore, even if the ALJ had offered this reason to reject plaintiff's testimony, substantial evidence does not support that plaintiff failed to seek treatment or failed to follow prescribed treatment for sleep difficulties.  To the contrary, the record supports that plaintiff was diagnosed and treated by Dr. Suh for insomnia.  *See* AR at 312, 318-19, 326-27, 329, 467, 469, 476-77.  Dr. Tyler also diagnosed and treated plaintiff for insomnia.  *See* AR at 354-55, 356-61, 364, 388. Defendant points to no evidence in the record, and this Court's own review of the record reveals no evidence that indicates plaintiff failed to follow the treatment recommendations of his doctors for insomnia or other sleep difficulties.

Additionally, as plaintiff points out, the record indicates that Dr. Baldwin's recommendation regarding a sleep study is equivocal and may not have been ever communicated to plaintiff.  Dr. Baldwin wrote:  "If these [blood tests] are normal then I think before making a diagnosis of fibromyalgia [plaintiff] should see a neurologist and maybe even have a sleep study.  Once his lab is back we will get together with him and make my final recommendation."  AR at 412.  Hence, the fact that plaintiff did not undergo a sleep center study is not a legally sufficient basis to reject plaintiff's testimony.

Defendant also argues that the ALJ properly rejected plaintiff's testimony because plaintiff's claim that his body was "exercise averse" was in "stark contrast" to plaintiff's

REPORT AND RECOMMENDATION - 12

1   doctors' recommendations that he engage in regular exercise.  Dkt. 12 at 7-8 (citing AR at 17,

2   41, 356-7, 491).  Defendant cites no legal authority to support this position.  Nor does

3   defendant cite to any evidence in the record that would indicate plaintiff's functional capacity

4   is greater than he alleges.  Rather, defendant argues that because plaintiff's pain is not a

5   medically determinable impairment, the ALJ was not required to consider its severity

6   separately from plaintiff's fibromyalgia.  Dkt. 12 at 7-8.  This Court does not find defendant's

7   position persuasive.

8          Plaintiff's statements regarding his diminished physical capacity are not inconsistent

9   with his doctors' recommendations that he engage in regular modest exercise as part of his

10  treatment for fibromyalgia.  Further, to the extent that the ALJ rejects plaintiff's testimony

11  regarding his diminished physical capacity as inconsistent with plaintiff's report in September

12  2008 that he was able to walk 30 to 45 minutes per day, this is not a clear and convincing

13  reason supported by substantial evidence in the record.  *See Smolen*, 80 F.3d at 1284; *Reddick*,

14  157 F.3d at 722.  Although the Ninth Circuit has recognized "two grounds for using daily

15  activities to form the basis of an adverse credibility determination," either, they can "meet the

16  threshold for transferable work skills," or, they can "contradict [the claimant's] other

17  testimony", neither ground is met here.  *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007).

18  Plaintiff's report to his doctor in 2008 that he was able to walk 30 to 45 minutes per day does

19  not meet the threshold for transferable work skills nor does it contradict plaintiff's other

20  testimony.  *See e.g.* AR at 41-42 (explaining attempts to engage in regular exercise).

21         As plaintiff points out, the Ninth Circuit has held that limited walking for exercise does

22  not detract from a claimant's credibility as to his overall disability.  *Vertigan v. Halter*, 260

23  F.3d 1044, 1050 (9th Cir. 2001) (noting that although a claimant may engage in activities for

24  therapeutic reasons despite pain "that does not mean that [he] could concentrate on work

1    despite the pain or could engage in similar activity for a longer period given the pain

2    involved") (citing *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)).  Moreover, by not

3    defending this reason in her brief, the Commissioner concedes that the ALJ's assessment of

4    this evidence is an error.

5         Defendant also argues that the ALJ properly rejected plaintiff's testimony regarding his

6    mental difficulties because the treatment record reflects that plaintiff received almost no mental

7    health treatment.  Dkt. 12 at 8-9 (citing *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005)

8    (ALJ properly discredited a claimant's testimony regarding depression and fatigue because she

9    did not seek any treatment or evaluation)).  In contrast to the claimant in *Burch*, however, the

10   record before this Court supports that plaintiff sought treatment for *all* of his fibromyalgia

11   related symptoms, including cognitive difficulties.  *See e.g.* AR at 318 (seeking treatment for

12   memory loss/poor memory), 321 (seeking treatment for forgetfulness), 331 (seeking treatment

13   for anxiety),  333 (seeking treatment for his emotional state), 336 (seeking treatment for

14   memory loss, blank stares, and depression), 340 (seeking treatment for mental issues including

15   forgetfulness and lack of concentration and alertness), 342 (seeking treatment for difficulty

16   with concentration), 350 (seeking treatment for difficulties with focus), 364 (seeking treatment

17   for confusion and difficulties thinking straight), 374-75 (seeking treatment for mood swings,

18   anxiety, tearfulness, and low motivation),  410 (seeking treatment for trouble thinking clearly

19   and decline in cognitive ability), 412 (seeking treatment for trouble thinking clearly).

20        Defendant points to no evidence, and this Court's review of the record identifies no

21   evidence that plaintiff was ever advised by his doctors to engage in a course of mental health

22   treatment separate from his treatment for fibromyalgia.  Moreover, in finding that plaintiff's

23   fibromyalgia is a medically determinable impairment, the ALJ recognizes plaintiff's reported

24   mental difficulties as part of the constellation of signs, symptoms, and co-occurring disorders

REPORT AND RECOMMENDATION - 14

necessary for a valid diagnosis of fibromyalgia under the American College of Rheumatology criteria.  *See* AR at 12 ("While there is no indication of specific tender points, the record does demonstrate symptoms including fatigue, waking unrefreshed, anxiety, diarrhea, insomnia, etc. *See e.g.* Ex. 4F") (citing AR at 290-343 (documenting a variety of mental symptoms typical of fibromyalgia including memory difficulties, anxiety, depression, and lack of concentration and alertness)); *see also* SSR 12-2p.  For these reasons, the ALJ's rejection of plaintiff's symptom testimony because plaintiff did not seek mental health treatment in addition to the treatment he received for fibromyalgia is not a clear and convincing reason supported by substantial evidence in the record.  *See Smolen*, 80 F.3d at 1284; *Reddick*, 157 F.3d at 722.  As such, the ALJ's assessment of plaintiff's credibility is reversed and remanded for further administrative proceedings.

>        B.        The ALJ's Assessment of the Medical Evidence

Plaintiff next argues that the ALJ erred by rejecting the medical opinions of his treating physician Erik Suh, M.D., and treating rheumatologist John Baldwin, M.D.  Dkt. 11 at 9-13. It is notable that the ALJ rejects *all* of the medical opinions in the record offered by the physicians who have firsthand knowledge of plaintiff's condition.  AR at 14-16.  Dr. Suh opined plaintiff is not able to carry out a conversation for any length of time, not able to stand or carry any objects for more than one hour, frequently has short term memory loss, and is not able to focus or concentrate sufficiently to hold down a job.  AR at 480.  Dr. Baldwin opined plaintiff is disabled due to symptoms from fibromyalgia and that plaintiff's irritable bowel syndrome is also quite disabling.  AR at 411.

The ALJ does not find these medical opinions persuasive.  AR at 15-16.  Instead, the ALJ relies on the opinion of the non-examining state agency physician, who concludes that the medical record supports no more than minimal functional limitations, to find that plaintiff's

1    fibromyalgia is not severe.  AR at 14 (citing AR 68-73).  Defendant argues that the ALJ

2    reasonably discounted the opinions of plaintiff's treating sources. Dkt. 12 at 10-16.  This

3    Court disagrees.  The ALJ's treatment of this evidence is inconsistent with the legal standards

4    set forth in *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007)*, and should be reversed.

5           As a matter of law, more weight is given to a treating physician's opinion than to that

6    of a non-treating physician because a treating physician "is employed to cure and has a greater

7    opportunity to know and observe the patient as an individual."  *Magallanes v. Bowen*, 881 F.2d

8    747, 751 (9th Cir. 1989); *see also Orn*, 495 F.3d at 631.  A treating physician's opinion,

9    however, is not necessarily conclusive as to either a physical condition or the ultimate issue of

10   disability, and can be rejected, whether or not that opinion is contradicted.  *Magallanes*, 881

11   F.2d at 751.  If an ALJ rejects the opinion of a treating or examining physician, the ALJ must

12   give clear and convincing reasons for doing so if the opinion is not contradicted by other

13   evidence, and specific and legitimate reasons if it is.  *Reddick v. Chater*, 157 F.3d 715, 725

14   (9th Cir. 1988).  "This can be done by setting out a detailed and thorough summary of the facts

15   and conflicting clinical evidence, stating his interpretation thereof, and making findings."  *Id.*

16   (citing *Magallanes*, 881 F.2d at 751).  The ALJ must do more than merely state his/her

17   conclusions.  "He must set forth his own interpretations and explain why they, rather than the

18   doctors', are correct."  *Id*. (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)).

19   Such conclusions must at all times be supported by substantial evidence.  *Reddick*, 157 F.3d at

20   725.

21          The opinions of examining physicians are to be given more weight than non-examining

22   physicians.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  Like treating physicians, the

23   uncontradicted opinions of examining physicians may not be rejected without clear and

24   convincing evidence.  *Id.*  An ALJ may reject the controverted opinions of an examining

physician only by providing specific and legitimate reasons that are supported by the record. *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005).

Opinions from non-examining medical sources are to be given less weight than treating or examining doctors. *Lester*, 81 F.3d at 831. However, an ALJ must always evaluate the opinions from such sources and may not simply ignore them. In other words, an ALJ must evaluate the opinion of a non-examining source and explain the weight given to it. SSR 96-6p, 1996 WL 374180, at *2. Although an ALJ generally gives more weight to an examining doctor's opinion than to a non-examining doctor's opinion, a non-examining doctor's opinion may nonetheless constitute substantial evidence if it is consistent with other independent evidence in the record. *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Orn*, 495 F.3d at 632-33.

As a threshold matter, to the extent the Commissioner contends that the applicable standard of review does not require the ALJ to provide "clear and convincing" or "specific and legitimate" reasons supported by substantial evidence to reject the opinion of a treating physician, this Court disagrees. *See Lester*, 81 F.3d at 830. As discussed previously, the Ninth Circuit recently denied the Commissioner's attempts to undermine the clear and convincing standard in the context of a claimant's credibility assessment, stating the suggestion "lacks any support in precedent and must be rejected." *Garrison v. Colvin*, 759 F.3d 995, 1015 n. 18 (9th Cir. 2014) (rejecting the argument that the Court should apply a standard lower than clear and convincing in reviewing ALJ's evaluation of claimant's testimony where there was no evidence of malingering). The Ninth Circuit's reasoning in *Garrison* is equally persuasive in this context. *See Id.* Accordingly, the ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. *Lester*, 81 F.3d at 830. Even when a treating or examining physician's opinion is contradicted, that

1   opinion "can only be rejected for specific and legitimate reasons that are supported by

2   substantial evidence in the record." *Id*. at 830-31.

3           Here the ALJ determined that the medical opinions offered by plaintiff's treating

4   physician and treating rheumatologist regarding plaintiff's symptoms and limitations are not

5   persuasive.  AR at 15-16.  Instead, the ALJ found that the medical record supports no more

6   than minimal limitations, as endorsed by the state agency reviewing physician.  AR at 14

7   (citing AR at 68-73).  It is important to note that this physician neither examined nor treated

8   plaintiff.  *See* AR at 71; *see also* AR at 72 (finding insufficient evidence to establish a

9   medically determinable mental impairment).

10          In contrast, plaintiff's treating physician and treating rheumatologist, a doctor who

11  specializes in treating conditions like fibromyalgia, both opine that plaintiff's fibromyalgia

12  causes functional limitations that significantly limit, if not preclude, plaintiff's ability to

13  perform various basic work related activities.  *See* AR at 411, 480.  As discussed previously,

14  the opinions of treating physicians are to be given more weight than non-examining physicians.

15  *Lester*, 81 F.3d at 830; *Orn*, 495 F.3d at 631.  Hence, the ALJ's rejection of these opinions in

16  favor of the opinion of a non-examining physician is legal error.  *See Orn*, 495 F.3d at 631.

17  On remand, the ALJ should re-assess the medical opinions of plaintiff's treating sources.

18          C.      The ALJ's Assessment of the Lay Witness Testimony

19          Plaintiff also argues that the ALJ erred by rejecting the lay witness testimony.  Dkt. 11

20  at 13-19.  Similar to the ALJ's treatment of the medical opinions of plaintiff's treating

21  physicians, the ALJ rejects the testimony of *all* of the lay witnesses who provided testimony

22  regarding their observations of plaintiff during the relevant period in this claim.  AR at 18-20.

23  As with the ALJ's assessment of plaintiff's testimony, the Commissioner does not defend all of

24  the reasons offered by the ALJ to reject the testimony of the lay witnesses.  Dkt. 12 at 16-18.

1    Instead, defendant argues that that ALJ's overarching reason for rejecting the lay witness

2    testimony, that it was not supported by the objective longitudinal treatment record, is a

3    germane reason for discounting lay witness testimony.  Dkt. 12 at 17 (citing *Bayliss v.*

4    *Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005)).  Defendant further contends that because the

5    lay witness testimony is similar to plaintiff's own testimony, which the ALJ rejected, the ALJ

6    could reasonably discount the lay witness statements for the same reasons.  Dkt. 12 at 17-18

7    (citing *Valentine v. Comm'r of the Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009).  This

8    Court disagrees.

9           The Court already has determined that the ALJ failed to provide clear and convincing

10   reasons supported by substantial evidence to reject plaintiff's testimony.  *See supra*, section A.

11   Specifically, the Court overturned the ALJ's rejection of plaintiff's testimony on the basis that

12   it is not supported by the objective treatment record.  *Id.*  Similarly, in rejecting the lay witness

13   testimony, the ALJ repeatedly points to the lack of objective findings to corroborate the

14   various lay witness statements.  *See* AR at 18 (rejecting the testimony of plaintiff's wife

15   because it is "inconsistent with the objective longitudinal record"), 19 (rejecting the testimony

16   of plaintiff's friend because her observations of plaintiff "are not consistent with the

17   longitudinal record"), 19 (rejecting the testimony of another friend because plaintiff's

18   allegations of muscle weakness are not borne out on examination and because there is "no

19   evidence of mental involvement" to support plaintiff's reports of cognitive limitations), 19

20   (rejecting the testimony of various family members regarding plaintiff's muscle weakness

21   because they are unsupported by examination findings, including nerve studies), 20 (rejecting

22   the testimony of plaintiff's brother regarding plaintiff's gastrointestinal symptoms because

23   plaintiff's "portrayal of himself to his friends and family members is not supported by the

24   extensive objective examinations and objective medical evidence"), 20 (rejecting the testimony

REPORT AND RECOMMENDATION - 19

1   of plaintiff's father because his allegations are inconsistent with the "longitudinal record").  As

2   discussed in greater detail previously, this rationale fails in the context of the ALJ's

3   determination that plaintiff's fibromyalgia is a medically determinable impairment.  *See supra*,

4   section A.  For this reason, inconsistency with the objective longitudinal treatment record is not

5   a legally sufficient reason to reject the lay witness testimony in this case because this reason is

6   not supported by substantial evidence.  *See also Bruce v. Astrue*, 557 F.3d 1113, 1116 (9th Cir.

7   2009) (noting that an ALJ may not discredit "lay testimony as not supported by medical

8   evidence in the record").

9         Additionally, the ALJ relies on other reasons to reject the lay witness that are legally

10  insufficient.  *See e.g.* AR at 18 (rejecting the testimony of plaintiff's wife in part because

11  plaintiff did not obtain a sleep center study), 19 (rejecting the testimony of various family

12  members regarding plaintiff's cognitive difficulties because "no such complaints were ever

13  brought to the attention of any medical professional and no clinician ever noted such

14  significant cognitive symptoms" and because plaintiff never sought assistance for his mental

15  symptoms), 19 (rejecting the testimony of a family member regarding plaintiff's diminished

16  physical capacity because several treating physicians encouraged plaintiff to engage in

17  exercise.  This Court already has determined that these reasons are not supported by

18  substantial evidence in the record.  *See supra*, section A.

19        Further, the ALJ rejected the statements of two lay witnesses regarding plaintiff's

20  gastrointestinal difficulties because plaintiff's gastroenterologist Sang Kim, M.D.,

21  characterized plaintiff's bathroom habits as "pathological."  AR at 19; *see also* AR at 17-18.

22  The ALJ's reliance on this factor, however, leads the Court to conclude that the ALJ

23  misunderstands Dr. Kim's use of the term "pathological."  When used in a medical setting, the

24  term pathological is commonly understood to mean "relating to or dealing with disease".

1    Oxford English Dictionary Online (2014), http://www.oed.com/view/Entry/138800?

2    redirectedFrom=pathological& (accessed February 11, 2015).  In this context, the term

3    pathological does not imply that a patient is malingering or feigning symptoms or that the

4    patient's symptoms necessarily have a psychological origin.  *See Id.*  For these reasons, the

5    ALJ's assessment of the lay witness testimony in this case is reversed and remanded for further

6    administrative proceedings.

7            D.      This Matter Should be Remanded for Further Administrative Proceedings

8            The Court may remand this case "either for additional evidence and findings or to

9    award benefits."  *Smolen*, 80 F.3d at 1292.  Generally, when the Court reverses an ALJ's

10   decision, "the proper course, except in rare circumstances, is to remand to the agency for

11   additional investigation or explanation."  *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir.

12   2004) (citations omitted).  Thus, it is "the unusual case in which it is clear from the record that

13   the claimant is unable to perform gainful employment in the national economy," that "remand

14   for an immediate award of benefits is appropriate."  *Id.*

15           Benefits may be awarded where "the record has been fully developed" and "further

16   administrative proceedings would serve no useful purpose."  *Smolen*, 80 F.3d at 1292; *Holohan*

17   *v. Massanari*, 246 F.3d 1195, 1210 (9th Cir. 2001).  Specifically, benefits should be awarded

18   where:

19           (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the
             claimant's] evidence, (2) there are no outstanding issues that must be resolved
20           before a determination of disability can be made, and (3) it is clear from the
             record that the ALJ would be required to find the claimant disabled were such
21           evidence credited.

22   *Smolen*, 80 F.3d 1273 at 1292; *McCartey v. Massanari*, 298 F.3d 1072, 1076-77 (9th Cir.

23   2002).

24

REPORT AND RECOMMENDATION - 21

Here, there are outstanding legal issues that must be resolved before a determination of disability can be made including the credibility of plaintiff's testimony and the testimony of various lay witnesses as well as the weight to be given to the medical opinions of plaintiff's treating sources.  As discussed previously, the ALJ bases much of his decision below on the lack of objective medical findings in this case.  In the context of plaintiff's diagnosis of fibromyalgia, this reasoning fails and should not be repeated on remand.  If the ALJ determines on remand that there is insufficient evidence to allow for the proper assessment of plaintiff's symptoms and limitations, the ALJ is reminded that he has the duty "to fully and fairly develop the record." *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (citations omitted).  Additional development of the record may be accomplished by recontacting plaintiff's treating sources, ordering a consultative examination, procuring the assistance of a medical expert in rheumatology, or some combination thereof.

## VIII.   CONCLUSION

For the foregoing reasons, the Court recommends that this case be REVERSED and REMANDED to the Commissioner for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g) and not inconsistent with the Court's instructions.  A proposed order accompanies this Report and Recommendation.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit by no later than **February 27, 2015**.  Failure to file objections within the specified time may affect your right to appeal.  Objections should be noted for consideration on the District Judge's motion calendar for the third Friday after they are filed.  Responses to objections may be filed within **fourteen (14)** days after service of objections.  If no timely objections are filed, the matter will be ready for consideration by the District Judge on **March 6, 2015**.

1        This Report and Recommendation is not an appealable order.  Thus, a notice of appeal

2  seeking review in the Court of Appeals for the Ninth Circuit should not be filed until the

3  assigned District Judge acts on this Report and Recommendation.

4        DATED this 13th day of February, 2015.

5

6                           _____

7                     JAMES P. DONOHUE
                     United States Magistrate Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

REPORT AND RECOMMENDATION - 23